## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**UNITED STATES OF AMERICA**
**ex rel. FOX RX, INC.,**

        **Plaintiff,**

    **v.**

**OMNICARE, INC. and**
**NEIGHBORCARE, INC.,**

        **Defendants.**

**1:11-cv-962-WSD**

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Relator's

Third Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(6)

and 9(b) [99] ("Pleading Defects Motion"), Defendants' Motion to Dismiss Counts

I, II, and III of Relator's Third Amended Complaint Pursuant to Rule 12(b)(1)

[100] ("Public Disclosure Motion"), and the Parties' Stipulation of Dismissal of

Copayment Count (Count IV) of the Relator's Third Amended Complaint [105]

("Stipulation of Dismissal").

## I.   BACKGROUND

On March 25, 2011, Relator Fox Rx, Inc. ("Relator") initiated this *qui tam*

action under the False Claims Act ("FCA") against Defendants Omnicare, Inc. and

NeighborCare, Inc. ("Defendants").  (See generally Compl. [1].)  On May 27,

2011, Relator filed, as a matter of right, its First Amended Complaint [6], and on

August 4, 2011, Relator filed, with the Court's leave, its Second Amended

Complaint [7].  The United States declined to intervene.  (See Order, Aug. 4, 2011

[13].)

     Relator is, or during the relevant times was, a sponsor of Medicare Part D

Prescription Drug Plans ("PDPs").[1]  In the eight (8)-count Second Amended

Complaint, Relator alleged that Defendants, specialty pharmacies providing

---

[1] As the Court explained in its August 29, 2012, Order [96],

> Part D is the federally funded prescription drug benefit program
> available to Medicare participants who voluntarily enroll.  The
> program is administered by the Centers for Medicare and Medicaid
> Services ("CMS") . . . .  CMS provides drug coverage to Part D
> enrollee beneficiaries through private [PDPs] offered and
> administered by private PDP sponsors authorized by CMS.
>
>     To participate in Part D, beneficiaries enroll in a PDP of their
> choice.  Beneficiaries pay premiums to their PDP sponsors.  Their
> PDP coverage is limited by certain deductibles, co-payments, and
> benefit caps.  Beneficiaries have their prescriptions filled at private
> pharmacies, which are generally within a PDP's contract network.
> The pharmacies submit their PDP bills for payment by the PDP
> sponsor, or the PDP sponsor's subcontractor, which pays the
> prescription costs not paid directly by the beneficiary.  CMS
> ultimately reimburses the PDP sponsor for varying portions of the
> prescription costs.

(Order, Aug. 29, 2012 [96] at 2–3.)

services to long-term care facilities ("LTCFs") throughout the United States,
engaged in four (4) separate schemes to defraud the Medicare Part D program by
seeking reimbursement for prescriptions, filled on behalf of Part D beneficiaries,
that are not covered or are not reimbursable by Part D: (i) prescriptions for atypical
antipsychotic drugs ("AAP") for "off-label" use of such drugs—that is, a use not
authorized by the Food and Drug Administration or supported in the authorized
medical literature (Counts I and II); (ii) partially-filled prescriptions ("split
prescriptions") requiring multiple refills and allowing Defendants to charge
unnecessary dispensing fees (Counts III and IV); (iii) prescriptions filled without
obtaining "prior authorization" (Counts V and VI); and (iv) waiver of patients' co-
payments (Counts VII and VIII).

On December 21, 2011, Defendants moved to dismiss the Second Amended
Complaint on the grounds that Counts I through VI failed to state a claim under the
FCA and that all of the counts failed to be pleaded with particularity as required by
Rule 9(b) of the Federal Rules of Civil Procedure.  (See Defs.' Mot. Dismiss [33].)
On August 29, 2012, the Court granted in part and denied in part Defendants'
motion to dismiss.  (Order, Aug. 29, 2012 [96].)  The Court dismissed Counts III,
IV, V, VI, and VIII for failure to state a claim.  The Court held that Part D does not
reimburse claims for "off-label" AAP and that, therefore, Counts I and II stated

claims for relief.  The Court further found, however, that Counts I, II, and VII were not pleaded with particularity.  The Court dismissed Counts I, II, and VII without prejudice and granted Relator leave to "file an amended complaint . . . to re-plead Counts I, II, and VII."  (Id. at 33.)

On September 18, 2012, Relator filed its Third Amended Complaint [98]. Counts I and II of the Third Amended Complaint correspond to Counts I and II of the Second Amended Complaint.  Count I alleges that Defendants violated 31 U.S.C. § 3729(a)(1)(A) by submitting claims for reimbursement for "off-label" AAP prescriptions, and Count II alleges that Defendants violated 31 U.S.C. § 3729(a)(1)(B) by making "false records or statements" in connection with claims for reimbursement for "off-label" AAP prescriptions.  Relator alleges that Counts I and II consist of "thousands" of claims submitted, since January 1, 2006, to Relator and "other PDP Sponsors."  (3d Am. Compl. [98] ¶¶ 95, 113, 134–139.)[2]

---

[2] With the Third Amended Complaint, Relator submitted spreadsheets ("Attachments A1" to "A3"), detailing a "sample" of the alleged off-label AAP prescriptions for twenty (20) specific patients.  (See 3d Am. Compl. [98] ¶¶ 114–115; id. exs. A1–A3 [98-1 to 98-3].)  For each patient, Attachment A2 lists medical diagnoses showing that, while the patient suffers dementia, he does not have a condition for which AAP would be prescribed for an approved use.  The diagnoses are based, at least in part, on "prescription hierarchical condition category" data (referred to by the parties as "RxHCC data") received by Defendants from CMS. (See id. ¶¶ 106–110.)  For each prescription listed for each patient, Attachment A2 show numerous data, including: the specific drug, with its dosage and quantity; the cost of the drug, including the exact amounts paid by Relator and by Medicare; the

Count III of the Third Amended Complaint alleges that Defendants made "reverse false claims" in violation of 31 U.S.C. § 3729(a)(1)(G).  Count III of the Third Amended Complaint is the first "reverse false claims" allegation pleaded in this matter.  Relator did not seek, and the Court did not grant, leave for Relator to plead this count.

Count IV of the Third Amended Complaint corresponds to Count VII of the Second Amended Complaint.  It alleges that Defendants violated 31 U.S.C. § 3729(a)(1)(A) by submitting claims for reimbursement for prescriptions after waiving co-payments for the prescriptions.

On October 2, 2012, Defendants filed their Pleading Defects Motion, seeking dismissal of the Third Amended Complaint on the grounds that (i) Relator improperly asserted Count III without leave of the Court, (ii) Relator failed to plead that Defendants acted "knowingly" with respect to the alleged FCA

---

date the prescription was filled by Defendants; the date Defendants submitted a claim for the prescription to Realtor's third-party processor; the date the third-party processor submitted the claim to Relator; and the dates Relator submitted the claim to Medicare and Medicare approved payment for the claim.  Attachment A3 shows the "prescription drug event" ("PDE") data that corresponds to each of the prescriptions listed in Attachment A2.  The PDE data include information submitted to Medicare in connection with the claim and a "service provider id" that indicates the specific pharmacy location that filled the prescription and submitted the claim.  Attachments A2 and A3 detail prescriptions filled only in 2009 and 2010, and submitted only to Relator, as opposed to any other PDP sponsor.

violations, and (iii) Relator again failed to plead any claims with particularity as required by Rule 9(b).

On October 5, 2012, Defendants filed their Public Disclosure Motion, seeking dismissal of Counts I, II, and III on the ground that the Court lacks subject matter jurisdiction over the claims because they are based on numerous forms of publicly disclosed information.[3]  On February 27, 2013, despite having declined to intervene, the United States filed a "statement of interest" [115] in response to the Public Disclosure Motion in which it argues that, contrary to one of Defendants' arguments, RxHCC data is not publically available.  Defendants did not respond to the United States's statement of interest.

On November 5, 2012, the parties submitted their joint Stipulation of Dismissal in which they purport to stipulate that Relator's copayment waiver claims, in Count IV of the Third Amended Complaint, are voluntarily dismissed pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.

---

[3] It is not clear to the Court why Defendants filed the Pleading Defects and Public Disclosure Motions separately rather than as one motion, as contemplated by Rule 12(g)(1) of the Federal Rules of Civil Procedure.  It is possible that two motions were filed to structure around the Court's Local Rule limiting the length of briefs. See L.R. 7.1(D).  The Court admonishes counsel that if they need relief from the Court's procedural limitations, they should seek it directly, as provided for in the Rules.

## II.   STIPULATION OF DISMISSAL

In their Stipulation of Dismissal, the parties purport to stipulate that Relator's claims in Count IV of the Third Amended Complaint, alleging that Defendants improperly waived copayments, are voluntarily dismissed pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.  Rule 41(a) provides that, after a defendant has filed an answer, "the plaintiff may dismiss an *action* without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared."  Fed. R. Civ. P. 41(a)(1)(A) (emphasis added).  Courts uniformly have held that Rule 41(a) does not permit the dismissal of individual claims from a multi-claim action but only authorizes the dismissal of an entire action.  See 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2362, at 413–14 & n.13 (3d ed. 2008 & Supp. 2012) (collecting cases) ("Rule 41(a) is applicable only to the voluntary dismissal of all the claims in an action."); see also Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1106 (11th Cir. 2004) (holding that a district court is "not empowered to dismiss only certain claims under Rule 41"); Exxon Corp. v. Md. Cas. Co., 599 F.2d 659, 662 (5th Cir. 1979)[4] (holding that Rule 41(a) allows the dismissal of an "action," not "the separate claims which

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Former Fifth Circuit issued before the close of business on September 30, 1981.

make up an action").  As many authorities have explained, the proper way for a plaintiff to remove a single claim is to move to amend the complaint under Rule 15.  See, e.g., 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2362, at 413–14 (3d ed. 2008).

Because the Stipulation of Dismissal attempts to dismiss only the copayment-related claims in Count IV, which do not constitute Relator's entire action, the Stipulation of Dismissal is not effective under Rule 41(a).  See Fed. R. Civ. P. 41(a)(1)(A); Klay, 376 F.3d at 1106.  The Court, however, construes the Stipulation of Dismissal as an unopposed motion, under Rule 15, to amend Relator's pleadings to remove the claims in Count IV.  See, e.g., Anderberg v. Masonite Corp., 176 F.R.D. 682, 686 (N.D. Ga. 1997) ("When a party seeks to dismiss a single claim in a multi-count complaint instead of an entire action, . . . the motion should be treated as a motion to amend the complaint under Rule 15(a) to delete the specific claim.").  Because all of the parties consent to the removal of Count IV from this action, the Court grants the dismissal of Count IV under Rule 15(a).[5]  See Fed. R. Civ. P. 15(a)(2) (providing that "a party may amend its pleading . . . with the opposing party's written consent").

---

[5] Because of the parties' mutual consent and because amendment removing Count IV does not add to the litigation, the Court further finds that Rule 16, requiring

8

## III.   PLEADING DEFECTS MOTION

In their Pleading Defects Motion, Defendants argue that Count III of the Third Amended Complaint should be dismissed because it was filed without the Court's leave and that Counts II and III should be dismissed for failure to state a claim and for failure to be pleaded with particularity.[6]

### A.   <u>Count III</u>

In Count III of the Third Amended Complaint, Relator asserts, for the first time, "reverse" false claims allegations against Defendants under subsection (a)(1)(G) of 31 U.S.C. § 3729.  Subsection (a)(1)(G) imposes FCA liability on a defendant that "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." <u>See</u> 31 U.S.C. § 3729(a)(1)(G) (Supp. V. 2011).  Liability under subsection (a)(1)(G) is distinct from liability under the other provisions of the FCA, including

---

good cause to amend a complaint after the time set in the case schedule, is satisfied.  <u>See</u> Fed. R. Civ. P. 16(b)(4).

[6] The Pleading Defects Motion also seeks the dismissal of Count IV.  Because Count IV is dismissed pursuant to the Stipulation of Dismissal, as discussed above, the Pleading Defects Motion is denied as moot as to Count IV.

subsections (a)(1)(A) and (a)(1)(B), asserted in Counts I and II of the Third

Amended Complaint.  See, e.g., United States ex rel. Matheny v. Medco Health

Solutions, Inc., 671 F.3d 1217, 1221–22 (11th Cir. 2012) (contrasting traditional

false claims and "reverse" false claims and setting forth the elements of a "reverse"

false claim action under the predecessor to 31 U.S.C. § 3729(a)(1)(G)).

     Rule 15(a) of the Federal Rules of Civil Procedure allows a plaintiff to file

*one* amended complaint as a matter of course, under certain timing requirements.

See Fed. R. Civ. P. 15(a)(1).  Subsequent amended complaints may be filed only

"with the opposing party's written consent or the court's leave."   See Fed. R. Civ.

P. 15(a)(2).  There is no dispute that the filing of the Third Amended Complaint

required Defendants' consent or leave of the Court.  The Court, in its August 29,

2012, order of dismissal, granted Relator leave to file the Third Amended

Complaint "to re-plead Counts I, II, and VII" of the Second Amended Complaint,

asserting claims under subsections (a)(1)(A) and (a)(1)(B) of 31 U.S.C. § 3729.

Relator did not seek, and the Court did not grant, leave to assert any other claims,

including claims under subsection (a)(1)(G).[7]  Defendants did not consent to Count

---

[7] The addition of this claim also violates the Preliminary Report and Discovery
Plan (the "Plan") filed by the parties on January 20, 2012, and approved by the
Court on February 23, 2012.  The Plan required any amendments to the pleadings
to be filed not "LATER THAN THIRTY (30) DAYS after the [Plan] [was] filed."
(Plan [39] ¶ 6(b), at 10.)  Relator acknowledged amendments after that time

III being asserted.  Count III of the Third Amended Complaint is required to be dismissed.[8]

B.     Counts I and II

1.     *Legal Standard*

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences."  Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010).  Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true."  Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (1996)).  Similarly, the Court is not required to accept conclusory allegations and legal conclusions as true.  See

---

required the Court to give leave to amend.  The leave to amend granted here did not include leave to assert the claims in Count III of the Third Amended Complaint.

[8] In its opposition, Relator asks the Court to retroactively grant leave for the filing of Count III because Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the "court should freely give leave when justice so requires."  The Court does not consider Relator's request because it is not presented in a motion and does not afford Defendants the opportunity to respond.  Relator also ignores that Rule 16(b)(4) requires a showing of good cause in seeking the Court to allow an untimely amendment to a complaint.

Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010)

(construing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly,

550 U.S. 544 (2007)).

      "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570)).  Mere "labels and

conclusions" are insufficient.  Twombly, 550 U.S. at 555.  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  This requires more than

the "mere possibility of misconduct."  Am. Dental, 605 F.3d at 1290 (quoting

Iqbal, 556 U.S. at 679).  The well-pled allegations must "nudge[] their claims

across the line from conceivable to plausible."  Id. at 1289 (quoting Twombly, 550

U.S. at 570).

      Rule 9(b) of the Federal Rules of Civil Procedure requires that a party

alleging fraud "must state with particularity the circumstances constituting fraud."

To satisfy Rule 9(b), the complaint must set forth "(1) precisely what . . .

representations or what omissions were made, and (2) the time and place of each

such statement and the person responsible for making (or, in the case of omissions,

not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006) (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)). "This means the who, what, when, where, and how . . . ." Id. (quoting Gross v. Medaphis Corp., 977 F. Supp. 1463, 1470 (N.D. Ga. 1997)). Intent and knowledge "may be alleged generally." Fed. R. Civ. P. 9(b).

> 2.   *Analysis*

In Counts I and II of the Third Amended Complaint, Relator alleges Defendants violated the FCA by submitting claims for off-label AAP and are liable under subsections (a)(1)(A) and (a)(1)(B) of 31 U.S.C. § 3729. Those provisions impose liability on "any person who—(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1) (Supp V. 2011). To state a claim under either provision, a relator must allege a "false claim." Under subsection (a)(1)(B), a relator is required also to allege a "false record or statement." Both provisions are subject to the heightened pleading requirements of Rule 9(b). In their Pleading Defects Motion, Defendants argue that Relator fails to

plead that Defendants acted "knowingly" and that Relator failed to plead its claims

with particularity sufficient to satisfy Rule 9(b).[9, 10]

_____

[9] Defendants further contend that Relator improperly "bolstered" the factual allegations in the Third Amended Complaint using information that it obtained during discovery in this matter. Relying on United States ex rel. Atkins v. McInteer, 470 F.3d 1350 (11th Cir. 2006), Defendants argue that the Court should disregard the "bolstered" allegations. In Atkins, the court explained that one of the policies underlying Rule 9(b)'s particularity requirement is to prevent a plaintiff from filing a fraud claim without any factual basis, with the hope of developing a viable claim through discovery. See 470 F.3d at 1359–60. Neither Atkins nor any other authority cited by Defendants, however, holds that a plaintiff is precluded from pleading facts that it *already* has obtained in discovery. The Court finds that any allegations in the Third Amended Complaint based on facts learned in discovery in this case may, in this case, be considered. The Court does not adopt a general rule that information learned in discovery in an action may be used to later seek to avoid dismissal for failure to meet the particularity requirements of Rule 9(b).

[10] Realtor argues that several of Defendants' arguments in support of the Pleading Defects Motion are improper under Rule 12(g) of the Federal Rules of Civil Procedure. Rule 12(g) generally prohibits the filing of a second Rule 12 motion to dismiss if the motion raises "a defense or objection that was available to the party but omitted from its earlier motion." Relator's Third Amended Complaint includes significant factual detail and augmented allegations that were not included in the Second Amended Complaint, the subject of Defendants' first motion to dismiss. The Court concludes, therefore, that Rule 12(g) does not preclude any of the arguments advanced in the Pleading Defects Motion. See, e.g., 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1388, at 492 (3d ed. 2004) (explaining that "a Rule 12 defense that becomes available because of new matter in [an] amended complaint may be asserted by motion"). The Court further notes that Rule 12(h) provides that, notwithstanding Rule 12(g), a defense based on the plaintiff's failure to state claim for relief is not waived.

      i.      Allegations that Defendants Acted "Knowingly"

Defendants first argue that Relator failed to plead that Defendants acted "knowingly" with respect to false claims.  Defendants specifically contend that certain paragraphs of the Third Amended Complaint, alleging that Defendants and their employees had access to diagnosis codes associated with AAP prescriptions (see 3d Am. Compl. [98] ¶¶ 63–74), are not sufficient to show that Defendants had "actual knowledge" that the AAP prescriptions were for off-label use.

"Actual knowledge" is not a necessary element of FCA liability.  Under the Act, a defendant acts "knowingly" not only if he has "actual knowledge" of a falsity but also if he "acts in deliberate ignorance of the truth or falsity of the information" or if he "acts in reckless disregard of the truth or falsity of the information."  See 31 U.S.C. § 3729(b)(1).  In paragraphs of the Third Amended Complaint ignored by Defendants, Relator alleges the following:

    a.  In Defendants' role as dispensing pharmacies, Defendants actually knew, or acted in reckless disregard or deliberate ignorance of the diagnostic history of many of Defendants' patients, through ICD-9 codes and textual descriptions provided by LTCFs, and through annotated Rx Orders; and

    b.  In Defendants' role as consulting pharmacies, Defendants actually knew, or acted in reckless disregard or deliberate ignorance of the contents of medical records of many of their patients, which reflected the absence of a medically accepted indication, and because as a consulting pharmacy, Defendants were obligated

> under federal regulations to oversee the drug regimens of the
> beneficiaries.

(3d Am. Compl. [98] ¶ 139 (Count I); accord id. ¶ 146 (Count II).)  These

paragraphs expressly allege that Defendants had actual or constructive knowledge

that the AAP prescriptions at issue were off-label, and they are sufficient to satisfy

Relator's burden to plead that Defendants acted "knowingly."[11]  See Fed. R. Civ.

P. 9(b) (providing that "knowledge, and other conditions of a person's mind may

be alleged generally"); see also Mizzaro v. Home Depot, Inc., 544 F.3d 1230, (11th

Cir. 2008) (recognizing that general allegations of knowledge are sufficient);

W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc., 287 F. App'x 81,

88 (11th Cir. 2008) (recognizing that "conclusory allegations" that a defendant

acted knowingly are sufficient).

      ii.     Whether the Claims Are Pleaded with Particularity

FCA claims must be pleaded with particularity under Rule 9(b) of the

Federal Rules of Civil Procedure.  See Hopper, 588 F.3d at 1324; United States ex

---

[11] Defendants' argument is directed at the strength of the proof underlying
Relator's allegation—that is, they challenge whether access to diagnosis codes, in
fact, conferred knowledge on Defendants.  On a motion to dismiss, the Court does
not evaluate the strength of Relator's underlying proof but only determines
whether the "knowingly" element was sufficiently alleged.  See, e.g., Wooten, 626
F.3d at 1196.  It was, and the Pleading Defects Motion thus cannot be granted on
this basis.

rel. Atkins v. McInteer, 470 F.3d 1350, 1357 (11th Cir. 2006); United States ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1308–10 (11th Cir. 2002). "Particularity means that 'a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them.'" Atkins, 470 F.3d at 1357 (alteration in original) (quoting Clausen, 290 F.3d at 1310) (internal quotation marks omitted). "The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior. The application of Rule 9(b), however, must not abrogate the concept of notice pleading." Clausen, 290 F.3d at 1310 (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)).

Defendants argue that the Third Amended Complaint, along with its Attachments A1 to A3, fails to plead a false claim that meets the requirements of Rule 9(b). Defendants further argue that, even if the allegations are sufficient to assert that Defendants submitted false claims through Relator during 2009 and 2010, the allegations do not support that Defendants submitted "nationwide" false claims through PDP sponsors other than Relator other than in 2009 and 2010.

a.      All Claims

Defendants first object that Relator's allegations, and the accompanying spreadsheets, fail to satisfy the Rule 9(b) particularity requirement because Relator failed to name the individual pharmacists, or other employees of Defendants, who processed the identified prescriptions.  Although Rule 9(b) requires that a plaintiff allege "who" engaged in the fraudulent scheme, Defendants do not cite, and the Court is not aware of, any authority holding that this requirement means that a plaintiff must state the names of specific employees who acted on behalf of a corporate defendant.[12]  Relator's spreadsheets specify the pharmacy location that filled each identified prescription, as well as detailed information on each prescription.  This information alerts Defendants "to the precise misconduct with which they are charged," and it satisfies Relator's obligation to plead "who"

---

[12] In Hopper, the Eleventh Circuit found that a FCA complaint did not satisfy Rule 9(b) because, although the plaintiffs described a scheme to cause the government to pay false claims, they did not allege facts of any particular false claim that was actually submitted, nor did they identify "specific persons or entities that participated in any step of th[e] process."  588 F.3d at 1326.  Defendants rely on this language as requiring that employees engaged in the alleged fraudulent scheme be specifically identified.  The Court disagrees.  The Hopper court found that the plaintiffs had not identified "the specific persons *or* entities" engaged in false claims.  Relator here has identified specific entities—Defendants.  Moreover, the Hopper court found that the complaint did not satisfy Rule 9(b) because it did not identify any particular false claims or the persons engaged in the alleged scheme.  Relator provides specific detail on numerous claims for twenty (20) patients.

engaged in the alleged fraudulent scheme.  See Clausen, 290 F.3d at 1310 (quoting Ziemba, 256 F.3d at 1202).

Defendants next argue that Relator's allegation that the identified prescriptions were off-label is not supported by sufficient evidence.  Defendants contend that Relator's reliance on RxHCC data to show that the identified patients did not suffer an on-label AAP condition is not sufficient to prove the patients' diagnoses at the relevant times, and that Relator does not show that Defendants "used" the RxHCC data.  Defendants further argue that Relator did not cite or attach compendia excerpts to prove that any particular AAP is off-label for the uses alleged.  Defendants' arguments confound Rule 9(b)'s particularity requirement with a plaintiff's ultimate burden to prove its claims.  Rule 9(b) heightens the standards for *pleading* but does not impose a requirement that a plaintiff prove its case at the pleading stage.  Cf. Hefferman v. Bass, 467 F.3d 596, 601 (7th Cir. 2006) (citing Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 683 (7th Cir. 1992)) (explaining that, while Rule 9(b) requires that certain facts regarding an alleged misrepresentation be pleaded, it "does not require a plaintiff to demonstrate that a representation was indeed false").  The particularity standard does "not abrogate the concept of notice pleading," and the Court does not consider here the sufficiency of the evidence underlying Relator's allegations.  See Clausen, 290

19

F.3d at 1310 (quoting <u>Ziemba</u>, 256 F.3d at 1202); <u>see also</u> <u>Wooten</u>, 626 F.3d at 1196 (explaining that the court must "assume that the factual allegations in the complaint are true").  Defendants' motion to dismiss the claims in Counts I and II is denied.[13]

b.     "Nationwide" Claims

Defendants finally argue that Realtor fails to plead any facts supporting its so-called "nationwide" claims—allegations that Defendants submitted false claims through PDP sponsors other than Relator and outside of a narrow time frame.  The parties do not dispute that the spreadsheets attached to the Third Amended Complaint detail only alleged prescriptions submitted by Defendants to Relator in 2009 or 2010.  Relator does not offer details of prescription claims submitted to, or through, other PDP sponsors or outside of the 2009 to 2010 time period.

A relator alleging "prolonged multi-act schemes" may satisfy Rule 9(b) by

---

[13] Defendants also appear to argue that the Third Amended Complaint does not allege that any off-label AAP prescriptions were actually submitted to Medicare. Because the submission of a false claim to the government is the "*sine qua non* of a False Claims Act violation," a relator must allege not only a fraudulent scheme with particularity but also must allege with particularity the facts of a submission of a false claim based on the scheme.  See <u>Clausen</u>, 290 F.3d at 1311; <u>see also</u> <u>Atkins</u>, 470 F.3d at 1357.  Attachment A2 expressly states the dates on which each identified prescription claim was submitted by Defendants to Relator's third-party processor, then to Relator, and finally to Medicare.  Attachment A2, submitted with the Third Amended Complaint, alleges the actual submission of false claims to the government.

pleading examples of the fraudulent actions alleged, rather than pleading the details of every act.  See Clausen, 290 F.3d at 1314 n.25.  The ability to plead examples, however, is not a "license to base claims of fraud on speculation and conclusory allegations."  Id. (quoting United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1997)).  Relator concedes that it lacks direct knowledge of any false claims submitted by Defendants through other PDP sponsors, but argues that the "Court has no reason to conclude that Defendants have different policies regarding [AAP] usage . . . in different states."  (Relator's Br. [102] at 23.)  Relator's contention, that Defendants' "nationwide" conduct should be inferred from the conduct for which Relator alleges actual information, is exactly what is proscribed by Rule 9(b).  See id.  Additionally, although Relator asserts in its brief that it has examples of false claims from 2006 to 2010, it did not plead examples of claims from this time period.  The Court considers only Relator's allegations, which demonstrate alleged fraudulent activity only in 2009 and 2010.  Relator's claims based on false claims submitted to PDP sponsors other than Relator, and claims based on prescriptions filled before 2009 or after 2010, are required to be dismissed.

## IV.   PUBLIC DISCLOSURE MOTION

A.   <u>Legal Standard</u>

A motion to dismiss for lack of subject matter jurisdiction under Rule

12(b)(1) of the Federal Rules of Civil Procedure may be either a "facial" or

"factual" attack.   <u>Morrison v. Amway Corp.</u>, 323 F.3d 920, 924–25 n.5 (11th Cir.

2003).   A facial attack challenges subject matter jurisdiction on the basis of the

allegations in the complaint, and the Court takes the allegations as true in deciding

whether to grant the motion.   <u>Id.</u>  Factual attacks challenge subject matter

jurisdiction in fact, irrespective of the pleadings.   <u>Id.</u>  When resolving a factual

attack, the Court may consider extrinsic evidence such as testimony and affidavits.

<u>Id.</u>  The parties have cited both the allegations in the Third Amended Complaint

and extrinsic evidence in their briefs, and the Court considers the Public Disclosure

Motion to be a "factual" attack.

B.   <u>Analysis</u>

In the Public Disclosure Motion, Defendants seek the dismissal of Counts I

and II of the Third Amended Complaint on the ground that Relator's off-label AAP

claims are barred by the FCA's "public disclosure bar."[14]  The public disclosure

---

[14] The Public Disclosure Motion also seeks the dismissal of Count III.  Because
Count III is dismissed, as discussed above, the Public Disclosure Motion is denied
as moot as to Count III.

bar precludes relators from pursing *qui tam* actions based on publicly disclosed

information.  Before March 2010, the public disclosure bar was jurisdictional, and

it provided as follows:

> No court shall have jurisdiction over an action under this section
> based upon the public disclosure of allegations or transactions in a
> criminal, civil, or administrative hearing, in a congressional,
> administrative, or Government Accounting Office report, hearing,
> audit, or investigation, or from the news media, unless the action is
> brought by the Attorney General or the person bringing the action is
> an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (2006) (amended 2010).  Although it was amended in

2010, the parties agree that the pre-amendment version of the public disclosure bar

governs at least the majority of the claims in this case.[15]  A "three-part inquiry"

---

[15] Effective March 23, 2010, the public disclosure bar was amended to narrow its applicability and to make it a basis for dismissal, not a jurisdictional threshold. See Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901 (2010) (amending 31 U.S.C. § 3730(e)(4)(A)); see also H.R. Rep. No. 111-97, at 5–7 (2009) (explaining that the purpose of H.R. 1788, a bill that was a precursor to the 2010 amendment, was to narrow the applicability of the public disclosure bar).  Defendants' Public Disclosure Motion is based solely on the pre-amended version of the public disclosure bar.  Realtor argues that the pre-amended public disclosure bar does not bar its claims here and alternatively argues that the Court should evaluate at least some of the claims under the amended version.  Because the Court agrees that the pre-amended version does not bar Realtor's claims, the Court does not reach the question of the applicability of the amended version.  If it did, the Court would find, for the same reasons that the pre-amendment version does not bar Relator's claims, that the amended version does not bar the claims.  See 31 U.S.C. § 3730(e)(4)(A) (Supp. V 2011) (providing that a FCA claim is barred only "if substantially the same

determines whether the (pre-amendment) public disclosure bar applies: "(1) have the allegations made by the plaintiff been publicly disclosed; (2) if so, is the disclosed information the basis of the plaintiff's suit; (3) if yes, is the plaintiff an 'original source' of that information." Battle v. Bd. of Regents, 468 F.3d 755, 762 (11th Cir. 2006) (quoting Cooper v. Blue Cross & Blue Shield of Fla., Inc., 19 F.3d 562, 565 n.4 (11th Cir.1994)). "A court reaches the original source question only if it finds the plaintiff's suit is based on information publically disclosed." Cooper, 19 F.3d at 565 (citing United States ex rel. Williams v. NEC Corp., 931 F.2d 1493, 1500 (11th Cir. 1991)).

Defendants submit numerous documents that they contend constitute public disclosures of the allegations in this case.[16] Defendants first cite documents

---

allegations or transactions as alleged in the action or claim were publicly disclosed").

[16] As with the Pleading Defects Motion, Realtor argues that the Public Disclosure Motion is prohibited by Rule 12(g) of the Federal Rules of Civil Procedure. The Court agrees that Defendants should have presented their Public Disclosure Motion at the outset of this case. This is a defense that has been considered by Defendants since at least January 20, 2012, when, in the Plan, Defendants stated that "Omnicare is analyzing the possible impact of the False Claims Act's public disclosure bar on the Court's jurisdiction." (Plan [39] ¶ 4, at 7.) The tardy assertion of this defense has made processing of this case less efficient. Because the Court "must dismiss" this case if it "determines at any time that it lacks subject-matter jurisdiction," the Court considers the motion. See Fed. R. Civ. P. 12(h)(3).

pertaining to a FCA action in which Omnicare was alleged to have submitted

reimbursement claims for prescriptions that violated federal anti-kickback statutes

(the "Lisitza litigation").  (See generally Defs.' Exs. 3–5, 7–11 [100-6 to 100-8,

100-10 to 100-14].)  In the Lisitza litigation, the plaintiffs alleged that Omnicare

solicited and received kickbacks from certain AAP manufacturers in exchange for

pressuring doctors to prescribe those manufacturers' drugs to patients who were

LTCF residents.  None of the documents submitted by Defendants show that the

litigation involved any claims that Defendants filled and sought reimbursement for

AAP prescriptions for off-label use.[17]  In some news articles reporting on the

Lisitza litigation, the phenomenon of off-label AAP, and its detrimental effect on

LTCF residents, is discussed.  (E.g., Defs.' Ex. 7 [100-10].)  However, none of the

articles submitted to the Court states that Defendants submitted reimbursement

claims for, or even filled, off-label AAP prescriptions.  The fact that Omnicare was

alleged to be involved in the submission of false claims related to AAP, but of an

entirely different nature than the false claims alleged here, is not sufficient to

constitute a public disclosure.  See Cooper, 19 F.3d at 567 (holding that a GAO

report naming defendant in connection with a general false claim scheme, but not

---

[17] The allegations appear to have been that Omnicare pressured doctors to prescribe
a particular brand of AAP to patients with existing AAP prescriptions.  (See, e.g.,
Defs.' Ex. 4 [100-7] ¶ 22.)

alleging that defendant was a participant in the scheme, was not a public disclosure of defendant's participation).

Defendants next argue that the RxHCC data on which Relator bases its allegations regarding patients' diagnoses is a public disclosure.  Defendants do not explain how RxHCC data is made available, and in its statement of interests, the United States explains that patient-specific RxHCC data is not available to the public.  Defendants did not respond to the United States's statement of interest.  The Court concludes that the record does not support that RxHCC data constitutes a public disclosure.

Defendants finally argue that government regulations, media reports, and medical and scientific journals reveal that off-label AAP prescriptions are problematic in LTCFs and dangerous for LTCF patients.  (See generally Defs.' Exs. 12–25 [100-15 to 100-28].)  One document, a press release issued by Senator Charles Grassley, calls for an inquiry into whether Medicare is paying for off-label AAP prescriptions.  (Defs.' Ex. 16 [100-19].)  Defendants characterize these disparate sources as evidence of public debate and discussion of the issue of off-label AAP given to LTCF residents, and they argue that they constitute a public disclosure.  These sources do not describe a scheme in which pharmacies submit

claims to be reimbursed by Medicare for filling off-label AAP. [18]  Moreover, these

sources do not allege that Defendants, in particular, have filled, and submitted

claims for reimbursement for, off-label AAP prescriptions.  A public disclosure,

sufficient to bar a relator's FCA action, must identify the particular defendant as

having engaged in the fraudulent scheme:

> Requiring that allegations specific to a particular defendant be
> publically disclosed before finding the action potentially barred
> encourages private citizen involvement and increases the chances that
> every instance of specific fraud will be revealed.  To hold otherwise
> would preclude any *qui tam* suit once widespread—but not
> universal—fraud in an industry was revealed.  The government often
> knows on a general level that fraud is taking place and that it, and the
> taxpayers, are losing money.  But it has difficulty identifying all of the
> individual actors engaged in the fraudulent activity.  This casting of a
> net to catch all wrongdoers is precisely where the government needs
> the help of its "private attorneys general."

---

[18] Defendants rely on United States ex rel. Black v. Health & Hosp. Corp. of
Marion Cnty., 494 F. App'x 285 (4th Cir. 2012) (per curiam), an unpublished
decision of the Fourth Circuit, for the proposition that public debate over the
propriety of certain actions constitutes a public disclosure of a FCA claim related
to the debated actions.  In Black, the relator alleged a false claim based on the State
of Indiana's alleged use of a certain set of "loopholes" to increase its Medicaid
reimbursements from the federal government.  The Court found that the claim was
subject to the public disclosure bar because the use of the "loopholes" had been
widely debated publicly, including their use by Indiana.  Unlike Black, the public
debates referenced by Defendants here do not reveal any participation by
Defendants in an alleged scheme.  Cf. Cooper, 19 F.3d at 567 (holding that a
public disclosure, for FCA purposes, must identify the particular defendant).

Cooper, 19 F.3d at 566 (citations omitted).[19]  The Court concludes that the public disclosure bar does not apply in this case, and the Public Disclosure Motion is denied.

## V.    CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Relator's Third Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) [99] is **GRANTED IN PART AND DENIED IN PART**.  It is **GRANTED** with respect to Count III and with respect to claims in Counts I and II based upon prescriptions filled before 2009 and after 2010, and with respect to reimbursement claims submitted to PDP sponsors other than Realtor.  It is **DENIED** with respect to all other claims.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Counts I, II, and III of Relator's Third Amended Complaint Pursuant to Rule 12(b)(1) [100] is **DENIED**.

---

[19] Defendants argue that, as the largest LTCF pharmacy in the nation, they are readily identifiable in the documents as providers of off-label AAP to LTCF residents.  Cooper requires that a "particular defendant" be identified as engaging in a fraudulent scheme.  The Court is not aware of any authority authorizing it to infer that Defendants participated in a known fraud simply because of their market position.

**IT IS FURTHER ORDERED** that the Parties' Stipulation of Dismissal of Copayment Count (Count IV) of the Relator's Third Amended Complaint [105], construed as a motion for leave to amend the Third Amended Complaint, is **GRANTED**.  Count IV of Relator's Third Amended Complaint is **DISMISSED** pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

**SO ORDERED** this 17th day of May, 2013.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE